

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| RICHARD ALLEN WOODBURY,           §<br>   Petitioner,           §<br>           §<br>vs.           §  Civil Action No.: 0:24-4530-MGL<br>           §<br>WARDEN, KERSHAW CORRECTIONAL           §<br>INSTITUTION,           §<br>   Respondent.           § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING PETITIONER'S PETITION WITH PREJUDICE**

Petitioner Richard Allen Woodbury (Woodbury), who is representing himself, filed this petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 (Section 2254) against Respondent Warden, Kershaw Correctional Institution (the Warden).

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting the Court grant the Warden's motion for summary judgment and dismiss Woodbury's petition. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court

may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on April 11, 2025. The Clerk of Court docketed Woodbury's objections on April 24, 2025, and his supplemental objections on May 2, 2025, and May 7, 2025. The Warden filed a reply on May 8, 2025, and Woodbury filed a sur-reply on May 21, 2025. The Court has carefully reviewed Woodbury's initial and supplemental objections, as well as his sur-reply, but holds them all to be without merit. It will therefore enter judgment accordingly.

In 2013, a Marion County grand jury indicted Woodbury for the murder of Ian Gause (Ian) and attempted murder of Ian's brother, Rishawn Gause (Rishawn). A jury acquitted Woodbury of the charge related to Rishawn but convicted him of voluntary manslaughter as to Ian.

Woodbury thereafter filed an application for post-conviction relief (PCR). As is relevant here, Woodbury alleged trial counsel was ineffective in failing to (1) properly present the defense of self-defense through eyewitness testimony, (2) object to a burden-shifting jury charge on mutual combat, (3) request a jury instruction on the lesser included offense of involuntary manslaughter, and (4) seek judicial review of his entitlement to immunity under the Protection of Persons and Property Act, S.C. Code Ann. §§ 16-11-410 to -450.

The PCR court dismissed Woodbury's application and denied his subsequent motion to reconsider. Woodbury unsuccessfully appealed but only as to the mutual combat issue.

Woodbury later filed this Section 2254 petition. He asserts four grounds for relief:

**Ground One:** Trial counsel was ineffective in failing to object to the trial court's instructions on mutual combat and voluntary manslaughter and request charges on involuntary manslaughter and self-defense.

**Ground Two:** Trial counsel was ineffective in failing to assert prosecutorial misconduct based on the state's violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959).

2

**Ground Three:** Trial counsel was ineffective in failing to present Lamont Davis as a witness.

**Ground Four:** Trial counsel was ineffective in failing to conduct DNA testing of a red substance on Ian's gun.

As the Court indicated above, the Warden filed a motion for summary judgment.

The Magistrate Judge determines Woodbury is procedurally defaulted from asserting his claims, except Ground One as it relates to the mutual combat charge. On the merits, however, the Magistrate Judge concludes Woodbury has neglected to demonstrate trial counsel was ineffective in declining to object to the mutual combat charge. Thus, the Magistrate Judge recommends the Court grant the Warden's motion and dismiss Woodbury's petition.

Woodbury filed eleven objections to the Report. The Court will consider each objection in turn.

As a preliminary matter, Woodbury's third, fourth, fifth, eighth, and eleventh objections attempt to litigate issues falling within the scope of the procedurally defaulted claims noted above. The Court agrees with the Magistrate Judge these claims are unpreserved, as Woodbury failed to raise them before the South Carolina Supreme Court. *See Spencer v. Murray*, 18 F.3d 237, 239–40 (4th Cir. 1994) (noting the Court should dismiss a Section 2254 claim for failure to exhaust where the petitioner neglected to present the claim to the highest state court for review). So, the Court will overrule these objections.

Woodbury's first, seventh, ninth, and tenth objections center around his claim trial counsel was ineffective in failing to object to the trial court's mutual combat charge.

By way of background, the trial court instructed the jury:

Now the defendant in this case, ladies and gentlemen, has raised the defense of self-defense. Self-defense is a complete defense; and if it is established, you must find the defendant not guilty. The State has the burden of disproving self-defense by proof beyond a reasonable doubt. If you have a reasonable doubt of the defendant's guilt after considering all of the evidence including the evidence of self-defense,

3

> then you must find the defendant not guilty. On the other hand, if you have no reasonable doubt of the defendant's guilt after considering all of the evidence including the evidence of self-defense, then you must find the defendant guilty.
>
> Now the following elements are required to establish self-defense. First the defendant must be without fault in bringing on the difficulty. If the defendant'[s conduct was the type which was reasonably calculated to and did provoke a deadly assault, the defendant would be at fault in bringing on the difficulty and would not be entitled to an acquittal based on self-defense. If the defendant voluntarily participated in mutual combat for purposes other than protection, the killing of the victim would not be self-defense. This is true even if during the combat the defendant feared death or serious bodily injury. However, if before the killing is committed the defendant withdraws and tried in good faith to avoid further conflict and either by word or act makes that fact known to the victim, he would be without fault in bringing on the difficulty. Now for mutual combat there must be a mutual intent and willingness to fight. This intent may be shown by the acts and conduct of the parties and the circumstances surrounding the combat. In addition, it must be shown that both parties were armed with deadly weapon, with a deadly weapon.
>
> Now the second element of self-defense is that the defendant was actually in imminent danger of death or serious bodily injury or the defendant actually believed he was in imminent danger of death or serious bodily injury.

Trial Transcript at 654–56.

Initially, the trial court instructed the jury on self-defense, so it is unclear why Woodbury argues his counsel was ineffective in failing to request a self-defense charge. Even still, Woodbury asserts the placement of the mutual combat charge between the first and second elements of self-defense impermissibly shifted the burden of proof from the state onto the defense. He insists this is a constitutional error to which trial counsel should have objected.

The Warden, however, posits Woodbury "has not demonstrated . . . the [mutual combat] charge was impermissible under state law, nor has he shown . . . trial counsel should have been aware that it was impermissible under state law." The Warden's Response at 2. The Court agrees with the Warden.

Generally, "the plea of self-defense is not available to one who kills another in mutual combat." *State v. Graham*, 196 S.E.2d 495, 450 (S.C. 1973). The state may advance a theory of

4

mutual combat where "there [was] a mutual intent and willingness to fight, 'manifested by the acts and conduct of the parties and the circumstances attending and leading up to the combat.'" *State v. Young*, 838 S.E.2d 516, 518–19 (S.C. 2020) (quoting *Graham*, 196 S.E.2d at 495). Additionally, the state must "prove the rival combatants were armed for the mutual combat with deadly weapons and each combatant knew the others were armed." *Id.* at 519 (citing *State v. Taylor*, 589 S.E.2d 1, 4–5 (S.C. 2003)).

In *Campbell v. State*, 893 S.E.2d 492 (S.C. Ct. App. 2023), the South Carolina Court of Appeals addressed the interplay between mutual combat and self-defense. The court observed the first element of self-defense requires a defendant to be without fault in bringing on the difficulty. But, the court explained, "if a defendant is found to have been involved in mutual combat, the [first] element of self-defense cannot be established. In other words, mutual combat acts as a bar to self-defense." *Id.* (internal quotation marks omitted) (quoting *Taylor*, 589 S.E.2d at 3–4).

Like the trial court here, the trial court in *Campbell* incorporated the mutual combat charge into the self-defense charge and instructed the jury, "[i]f the defendant voluntarily participated in mutual combat for purposes other than protection, the killing of the victim would not be self-defense." *Id.* On appeal, Campbell argued this portion of the charge "impermissibly shifted the burden of proof on self-defense to [the defense]." *Id.* The court, however, rejected his argument.

The *Campbell* court noted, "when evidence warrants a mutual combat charge, it may be charged to a jury even when read alongside a self-defense charge." *Id.* at 497–98. And, "because the charge was warranted," the court held "Campbell's trial counsel was not deficient in failing to object to its reading alongside the circuit court's jury charge on self-defense." *Id.* at 498.

Here, Woodbury fails to dispute the state presented evidence warranting a mutual combat charge. Nor could he reasonably do so, as trial testimony from four separate witnesses indicates

5

Woodbury and Ian had pre-existing ill will, developed an antecedent agreement to fight, and knew the other party was armed with a deadly weapon. The Court is thus unable to conclude the trial court's placement of the mutual combat charge unconstitutionally shifted the burden of proof onto Woodbury.

Turning to Woodbury's resulting claim of ineffective assistance of counsel, the Magistrate Judge explained a petitioner asserting such a claim must prove (1) trial "counsel's performance was deficient" and (2) trial counsel's "deficient performance prejudiced the defense[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The PCR court, however, found Woodbury neglected to establish either *Strickland* prong. More specifically, the PCR court concluded ample evidence supported the mutual combat charge, and it was thus unlikely the outcome of Woodbury's trial would have differed if counsel objected. And, the Court is unable to discern any error in the PCR court's determination.

For all these reasons, the Court will overrule Woodbury's first, seventh, ninth, and tenth objections.

In Woodbury's second objection, he challenges the Magistrate Judge's denial of his motion to appoint counsel. But, as the Court detailed immediately above, Woodbury's only preserved claim is meritless. He is therefore unentitled to counsel, and the Court will overrule his objection on this ground. *See* 18 U.S.C. § 3006A(a)(2)(B) (explaining the Court may appoint counsel to a financially eligible person seeking relief under Section 2254 if "the interests of justice so require"); *Jenkins v. Woodward*, 109 F.4th 242, 247 (4th Cir. 2024) (noting exceptional circumstances for the appointment of counsel exist only where the plaintiff has a colorable claim).

In Woodbury's sixth objection, he intimates the Court should excuse any procedural default as to Ground Four, which relates to trial counsel's failure to conduct DNA testing of the red

6

substance on Ian's gun, because he is actually innocent. Woodbury posits the red substance is his blood, and DNA testing would support his claim of self-defense—namely, that he stabbed Ian only because Ian first beat him with a gun.

The Warden, on the other hand, contends DNA testing "would not raise any substantial doubts about whether mutual combat has occurred. After all, mutual combat and [Woodbury] being injured in a struggle are consistent." The Warden's Response at 3.

As the Supreme Court has explained, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 496 (1986). "To satisfy the *Carrier* gateway standard, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In other words, the petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court shall "presume[] that a reasonable juror would consider fairly all of the evidence presented" and "conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*

Here, even assuming the red substance on Ian's gun is Woodbury's blood, the Magistrate Judge stated she was unable to "conclude [DNA] evidence would more likely than not have altered the jury's verdict." Report at 10. Woodbury insists this is mere speculation. But, considering the evidence presented to the jury and the trial court's instruction, the Court is unpersuaded.

As the Magistrate Judge noted, three witnesses testified Ian and Rishawn "were holding guns, fired a gun, or pointed guns at [Woodbury] shortly before or during the altercation." *Id.* at

7

11. One of these witnesses further testified Ian "had to be held back and was arguably the initial aggressor." *Id.* The state presented evidence indicating Woodbury "provoked the initial verbal confrontation between himself and [Ian]." *Id.* But, when "witnesses told [Woodbury] to leave[,]" Woodbury "instead went to his car, got a knife, and then returned to continue fighting with [Ian]." *Id.* "At least one witness testified [Woodbury] retrieved his knife before [Ian] got a gun[,]" and "[m]ultiple witnesses agreed [Woodbury] had opportunities to leave but chose to stay and fight." *Id.*

In light of the trial court's self-defense charge, which the Court detailed above, as well as extensive "evidence suggesting [Woodbury] was at fault for bringing on the difficulty and chose not to withdraw despite opportunities to do so," the Court, like the Magistrate Judge, "cannot say that additional evidence [Ian] hit [Woodbury] with his gun during the ensuing scuffle would more likely than not have persuaded the jury [Woodbury] acted in self-defense." Report at 12. So, Woodbury has neglected to show actual innocence, and the Court will overrule his sixth objection.

After a thorough review of the Report and record in this case under the standards set forth above, the Court overrules Woodbury's initial and supplemental objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of the Court the Warden's motion for summary judgment is **GRANTED**, and Woodbury's petition is **DISMISSED** with prejudice.

To the extent Woodbury seeks a certificate of appealability, his request is **DENIED**.

**IT IS SO ORDERED.**

Signed this 17th day of September 2025, in Columbia, South Carolina.

                                                s/ Mary Geiger Lewis
                                                MARY GEIGER LEWIS
                                                UNITED STATES DISTRICT JUDGE

*****
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of their right to appeal this Order within sixty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.